COOK *v.* THE STATE.

No. 8408.   FEBRUARY 19, 1932.

*John Commins* and *John M. Morrow,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw,* and *John H. Hudson,* contra.

ATKINSON, J.   The exception in this case is to a judgment refusing W. J. Cook a new trial after his conviction of the murder of Emma Jane Cook by shooting her with a shotgun.   The original motion for a new trial was on the usual general grounds.   The special grounds were as follows:

"1.   Because the following material evidence offered by the movant was illegally ruled out and withheld from the jury, against the repeated demands of the movant, to wit:   The following questions were asked State's witness Holcombe on cross-examination: (a) 'Mr. Holcombe, what is the general reputation of Cook's wife in the community out there?'   This question was objected to by State's counsel as being irrelevant.   The court ruled the question out, sustaining the objection.   (b) Q.   'Have you ever seen cars parked in front of the house?'   A.   'Yes, sir, several times.'   This question and answer were objected to by State's counsel, without giving any reason for said objection.   Same was sustained by the court, who stated, 'I'll rule that out.'   (c) Albert Morgan swore: 'I heard this fussing and rowing between him and Mrs. Cook; lots of times I could hear what they would say.   They were fussing and cussing at each other.   I couldn't say what was the cause of it.'   Following this testimony by Albert Morgan, which was not objected to, the following questions and answers and objection took

place: Q. 'There was a good many visitors to that home, was there or not?' A. 'Yes sir.' Q. 'Mostly men?' A. 'Yes sir.' These questions and answers were objected to by State's counsel as being immaterial and irrelevant, defendant's counsel contending that foundation was laid for these questions dealing with the wife's character by the introduction by the State of a lengthy written confession or statement of the accused, which statement dealt with the wife's general bad conduct and its bearing and effect on defendant's mind and general health affecting his mind. That defendant's wife's bad conduct had a direct bearing on the condition of defendant's mental condition, and was the cause of defendant's emotional or delusional insanity. After a lengthy argument between counsel, the court sustained the objection. The State's witness, Dr. R. W. McGee, testified on cross-examination (in part) as follows: 'There is such a thing as emotional insanity, where a person can get wrought up over one certain subject and might imagine there was a lot of grievances until he became so obsessed with that idea until he became insane on that subject. That's possible. I couldn't say definitely that it is possible for him to have been obsessed with some hallucination or something like that on September 11th, and then, generally speaking, last night appeared to be all right. There's some people that are rational on every subject and would fly· all to pieces when you mention certain other subjects to them. I wouldn't say the defendant in this case was or was not perfectly rational about every subject except one and then been suffering from emotional insanity on that subject, but he wasn't on the lines I examined him on; he mentioned trouble with his family and talked with me about it.' Following this testimony without objection the following took place: Q. 'What did he say?' A. 'He told me how sorry he was that the thing occurred.' Q. 'Did he tell you anything else about it?' A. 'Well, he said it was accidental, he was mighty sorry, he wouldn't have done it for anything in the world if it hadn't been an accident, and broke down and cried about it.' Without giving any reason, the State's counsel asked the court to rule that out. The court ruled it out, stating that he did so on the ground that it was a self-serving declaration, after same was insisted upon by defendant's counsel. Defendant's counsel then moved that all of the doctor's testimony be ruled out on the same ground. The court

said: 'Well, we better leave it in, I guess,' thereby sustaining the objection of State's counsel when just a few moments before he had ruled the same thing out on the ground that it was a self-serving declaration in behalf of the defendant.

"2. Because, during the progress of the trial, the trial judge erred in this, that he did intimate so as to form an opinion to the jury as to what had been proved, thereby biasing their minds in the following: The court: 'And do you contend that the reputation that the wife bears, that, would give him a right to kill his daughter?' Mr. Commins: 'No, sir, but it would have a bearing on his mind.' Defendant's counsel contends that above question by the court was misleading, and could be very easily misconstrued by the jury to imply that defendant Cook had no right to a defense of emotional insanity caused by his wife's conduct, and that her reputation had no bearing on the case or on his insanity. Defense claims that his wife's conduct caused him to get the shotgun to kill himself with.

"3. Because the court erred in refusing to give, in the charge, the following request to charge, the same having been submitted in writing before the judge had begun to charge the jury, to wit: 'In this connection we hereby request that the court in its charge to the jury give the law and the general charge of insanity to the jury; also that the court charge the jury as to delusional and emotional insanity. We cite to your honor the case of *Danforth* versus *State, 75 Ga.* 614.' The charge as to delusional and emotional insanity was not given to the jury, as requested in writing. This omission or refusal we assign as a specific error of the court. A copy of which is attached to this amended motion marked Exhibit F. (A letter addressed to the judge by the attorneys for defendant making request to charge in the above-quoted language.)

"4. Because the court erred in the interruption of the defendant while he was making his statement to the jury, to wit: Quoting from defendant's statement: 'The night before, she had got mad with me, had cussed me out, and I caught her around the waist, begged her and pleaded with her not to do these things,—to do right, that I loved her and wanted her to do right and I wanted to do right by her, but the way she was doing she was getting on my nerves and I was going all to pieces,—to please not do that way, that it was just killing me.' Here, the court interrupted,

'For goodness sake, Cook, cut out the details and get down to the date of the killing.' Defendant then continued his statement."

In support of this ground of the motion the affidavits of several persons were submitted, which were substantially the same, and in which the affiant deposed: "That he was present when the defendant William J. Cook made his statement, which was a very lengthy one; that when he had reached a point about three-fourths through, the said judge interrupted him with a statement in substance as follows: 'For goodness sake, Cook, cut out the details and get down to the date of the killing.' Whereupon the defendant after regaining his composure resumed his statement. That Judge Franklin naturally has a coarse voice; but he seemed somewhat worried, and his voice at this particular time seemed unusually coarse and gruff, and he spoke very loud as he interrupted the defendant." The State introduced counter-affidavits substantially alike, in one of which the affiant stated: "That the defendant, William J. Cook, in making his statement to the court and jury made a very lengthy and rambling statement; that after the said Cook had been speaking more than an hour and a half, the court, noticing the disquietude of the jurors, granted a short recess, so that the jurors might retire to the jury-room if they saw fit; that when the jurors returned to the box and the proceedings were resumed, the court in his usual and kindly manner turned to the defendant and said, to the best of deponent's recollection, 'Mr. Cook, you may finish your statement, and come right down to the day and the facts of the killing;' whereupon the said defendant Cook resumed his statement and completed the same. To deponent's recollection, the court used no harsh language whatsoever to the said defendant in directing him to complete his statement, but on the contrary deponent was struck with the kindly manner used by the court in addressing the said Cook." The judge's order approving the grounds of the motion for new trial was as follows: "The recitals of fact contained in the foregoing amended motion for new trial are hereby approved as true and correct, except the fourth ground of the amended motion. What happened concerning the exceptions in the fourth ground of the amended motion was that the prisoner started out his statement by saying that it was a 'long story and in fact nineteen years long.' At one time it seemed to me that it was going to take him equally as long to tell

it. He started from the date of his marriage, and recited in detail the happenings between him and his wife since the date of their marriage, and made a long, rambling statement, which lasted for at least an hour and half. After he had talked for at least an hour, the court merely suggested to him to not continue the irrelevant details but come down to the date of the killing. The defendant did not heed the court's admonition, but continued his statement in the way previously carried on by him."

The rulings in the headnotes sufficiently deal with the assignments of error, without further elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*